# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| v. | § | **CRIMINAL NO. 2:16-27-2(SS)** |
| | § | **CIVIL NO. 2:17-191** |
| **GEORGIA MICHELLE GREGG,** | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant/Movant Georgia Michelle Gregg filed a motion to vacate, set aside, or

correct her sentence pursuant to 28 U.S.C. § 2255 (D.E. 132), to which the Government

responded (D.E. 167) and Movant replied (D.E. 203). The Court subsequently granted

Movant leave to file an amended § 2255 motion (D.E. 192), which raised several new

claims not contained in her original § 2255 motion. The Government responded to

Movant's amended 2255 motion (D.E. 215), and Movant replied (D.E. 219). For the

reasons stated herein, Movant's amended § 2255 motion is **DENIED**.

## I. BACKGROUND

In 2013, Movant's sister and codefendant, Jada Gregg-Warren ("Gregg-Warren"),

pled guilty to possession with intent to distribute more than 100 grams of heroin and was

sentenced to nine months' imprisonment. While Gregg-Warren was in custody, Movant

took care of Gregg-Warren's two children, T.R. and J.R. However, the Texas Department

of Family and Protective Services (DFPS) removed T.R. and J.R. from Movant's home

after she gave birth to a baby that tested positive for methamphetamine. On November 6,

2014, the 407th Judicial District Court of Bexar County, Texas, terminated Gregg-

Warren's parental rights to T.R. and J.R. and appointed DFPS as permanent managing conservators. DFPS placed the children under the care of Gregg-Warren's half-brother and his wife, the Davises. However, after the Davises decided not to adopt T.R. and J.R. in 2015, DFPS began searching for new foster parents for the children.

Giving rise to the current criminal case, on August 20, 2015, Movant and Gregg-Warren entered the Davises' home in the middle of the night, took the children, and drove to the U.S.–Mexico border. The two sisters parted ways, and Gregg-Warren and the children got into another car with Gregg-Warren's husband and codefendant, Ivan Francisco Alvarez-Benavente ("Alvarez"). Gregg-Warren and Alvarez took the children to Mexico, where Alvarez's family lived. Between October 18, 2015, and December 9, 2015, the sisters' father and codefendant, Thomas Gregg, wired money to Gregg-Warren and Alvarez in Torreon, Mexico. In December 2015, Mexican Federal Police entered Alvarez's home, arrested Gregg-Warren, and recovered the children. Gregg-Warren and the children were returned to the U.S., and Movant and Alvarez were subsequently arrested in March 2016.

On March 23, 2016, Movant was charged with two counts of kidnapping, in violation of 18 U.S.C. §§ 1201 and 2. On July 6, 2016, she pled guilty to one count of kidnapping pursuant to a plea agreement. The Presentence Investigation Report (PSR, D.E. 105) calculated Movant's base offense level at 32, and 2 levels were added under U.S.S.G. § 2A4.1(b)(4) because the victims were not released within 30 days. After credit for acceptance of responsibility, Movant's total offense level was 31. With a Criminal History Category of I, her advisory Guideline range was 108–135 months' imprisonment. At

sentencing, the Court adopted the PSR without change and sentenced Movant to 108 months, the lowest end of the Guideline range.

Judgment was entered November 3, 2016. Movant did not appeal. She filed a § 2255 motion on May 30, 2017, and an amended § 2255 motion on December 27, 2017.

## II. MOVANT'S ALLEGATIONS

Movant's original § 2255 motion raised the following claims:

A. Trial counsel was ineffective because he failed to:
1. prepare and present an aggressive defense;
2. explain Movant's appellate rights;
3. effectively investigate or communicate with Movant concerning her case;
4. fully represent Movant's interests;
5. advocate for appropriate departures; and
6. object to inconsistencies and falsities;

B. Movant should have qualified for "minor role";

C. Movant received a harsher sentence than her more culpable codefendants; and

D. The Court exhibited "prejudice and bias" when it used the conduct of Movant's codefendants to enhance her sentence.

Movant's amended § 2255 motion repeats claims B, C, and D above concerning minor role, sentencing disparity, and judicial prejudice and bias. Her amended § 2255 motion also raises the following claims:

A. Trial counsel was ineffective because he failed to:
1. prepare and file certain motions;
2. file a direct appeal;
3. adequately communicate with Movant; and
4. perform an adequate investigation;

B. The Court lacked subject matter jurisdiction;

C. The Government committed prosecutorial misconduct; and

D. Movant's indictment, conviction, sentence and process were "illegal."

## III. 28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam). In addition, "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982).

## IV. STATUTE OF LIMITATIONS

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final. 28 U.S.C. § 2255(f).[2] The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the

---

2. The statute provides that the limitations period shall run from the latest of:

    (1) the date on which the judgment of conviction becomes final;
    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
    (3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

applicable period for seeking review of a final conviction has expired. *Clay v. United States*, 537 U.S. 522, 531–32 (2003); *United States v. Gamble*, 208 F.3d 536, 536–37 (5th Cir. 2000) (per curiam).

Movant's conviction became final on the last day to file a timely notice of appeal, that is, 14 days after the judgment was entered on the docket. FED. R. APP. P. 4(b). Judgment was entered on November 3, 2016. Movant's conviction therefore became final on November 17, 2016. Movant's original § 2255 motion, filed May 30, 2017, was timely. However, she did not file her amended § 2255 motion until December 27, 2017.

Because Movant's amended § 2255 motion was filed outside AEDPA's one-year statute of limitations, the Court must determine whether each claim raised in the amended § 2255 motion "relates back" to her first filing so as to render it timely. *See Mayle v. Felix*, 545 U.S. 644, 657–59 (2005) (examining the interaction between AEDPA's statute of limitations and the relation-back provision of FED. R. CIV. P. 15(c)). "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659 (citing *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1259 n. 29 (9th Cir.1982); 6A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1497, p. 85 (2d ed.1990)).

Finally, equitable tolling may allow for a late-filed motion, but such exceptions to limitations are rare. *Holland v. Florida*, 560 U.S. 631, 649 (2010); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2002). The party seeking equitable tolling bears the burden of demonstrating that tolling is appropriate. *United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008). To satisfy her burden, Movant must show that (1) she has diligently pursued her

rights, and (2) some extraordinary circumstance stood in her way. *Holland*, 560 U.S. 649;

*Petty*, 530 F.3d at 365. Movant has presented no facts that would suggest that she has

diligently pursued her rights or that some extraordinary circumstance prevented her from

timely asserting the new claims raised in her amended § 2255 motion.

## V. ANALYSIS

### A. Ineffective Assistance of Counsel

#### 1. Timeliness of Claims

Although Movant complains of ineffective assistance of counsel (IAC) in both her

original and amended motions under § 2255, "[n]ew claims of ineffective assistance of

counsel do not automatically relate back to prior ineffective assistance claims simply

because they violate the same constitutional provision." *United States v. Gonzalez*, 592

F.3d 675, 679 (5th Cir. 2009). Rather, the Court must decide whether Movant's amended

§ 2255 motion presents "'a new ground for relief supported by facts that differ in both time

and type from those the original pleading set forth.'" *Id.* (quoting *Mayle v. Felix*, 545 U.S.

644, 650 (2005)).

Movant's original § 2255 motion claimed counsel was ineffective because he failed

to: prepare and present an aggressive defense; explain Movant's appellate rights;

effectively investigate or communicate with Movant concerning her case; fully represent

Movant's interests; advocate for appropriate departures; and object to inconsistencies and

falsities. Her amended § 2255 motion claims counsel failed to: prepare and file certain

motions; prepare and file direct appeals; adequately communicate with Movant; and

perform an adequate investigation. The Court finds the IAC claims raised in Movant's

amended § 2255 motion related to counsel's pretrial and sentencing-related conduct—failure to file motions, communicate with Movant, or perform an adequate investigation—share a "common 'core of operative facts'" with the claims raised in Movant's original motion, and therefore relate back to her original filing. *See Mayle*, 545 U.S. at 659. However, Movant's claim in her amended § 2255 motion that counsel was ineffective for failing to file a direct appeal on Movant's behalf does not.

In her original § 2255 motion, Movant claims counsel was ineffective because he "failed to . . . explain appeal rights." D.E. 132, p. 4. Under each ground raised in her original motion, Movant stated that she did not raise the issue on appeal because "[m]y appeal rights were not explained to me so I did not appeal." *Id.*, pp. 5–9. In her motion for leave to amend her § 2255 motion, Movant claimed that "upon requesting Direct Appeals be filed[,] movants were told there were not grounds to file and they would get more time if they did. The only motions Mr. Granberry filed were for his numerous personal continuances using various excuses." D.E. 163, p. 3. This appears to allege ineffective assistance by Gregg-Warren's attorney instead of Movant's own counsel. Movant's amended § 2255 motion alleges that her counsel was ineffective because he "did not prepare or file . . . Direct Appeals." D.E. 192, p. 4. Under each ground raised in her amended § 2255 motion, Movant states that she did not raise the issue on appeal because "counsel stated there were no reasons for direct appeal nor were they explained to me so I did not appeal." *Id.*, pp. 4–8. Finally, in her reply to the Government's response to her original § 2255 motion—which Movant filed more than five months after her amended § 2255 motion—Movant alleges for the first time that she "requested that counsel do a direct appeal because she felt that

the sentence and whole proceeding was not what was agreed to or even warned about. She was told there wasn't anything to appeal and she would get more time. She did again request direct appeal and nothing came of it." D.E. 203, pp. 20–21.

Movant's original claim that counsel was ineffective for failing to explain her appellate rights involves different factual and legal questions than her amended claim that counsel failed to file a notice of appeal on her behalf after she repeatedly asked him to do so. *See Roe v. Flores-Ortega*, 528 U.S. 470, (2000) (distinguishing between situations where the defendant explicitly instructs counsel to file an appeal and where counsel fails to consult with the defendant about an appeal); *see also Gonzalez*, 592 F. 3d at 680 ("'Failing to file an appeal is a separate occurrence in both time and type,' from conduct that occurs at the sentencing phase . . . ."). Accordingly, this claim does not relate back to Movant's original § 2255 motion and is time-barred under AEDPA.

## 2. IAC Standard

An IAC allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on an IAC claim, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter*, 131 F.3d at 463.

### 3. Analysis

#### a. Failure to File Motions

Movant first complains that trial counsel failed to prepare and file: a motion to dismiss the indictment; motion for discovery; motion for grand jury transcripts; motion to subpoena evidence, including cell phone records, witness statements, DFPS records, bank records, hospital and other medical records for T.R. and J.R.; or "any other motions/filing to build any defense." D.E. 192, p. 4. According to Movant, she "had strong grounds for dismissal," as she and her codefendants were "exempt" from the federal kidnapping statute because Gregg-Warren was the biological mother of T.R. and J.R. D.E. 163, p. 2.

The federal kidnapping statute applies, in pertinent part, to anyone who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom

or reward or otherwise any person, *except in the case of a minor by the parent thereof.*" 18 U.S.C. § 1201(a) (emphasis added). However, the same statute further clarifies that "the term 'parent' *does not include a person whose parental rights . . . have been terminated* by a final court order." *Id.* § 1201(h) (emphasis added). On November 6, 2014, the 407th Judicial District Court of Bexar County, Texas, terminated Gregg-Warren's parental rights to J.R. and T.R. in Cause No. 2014-PA-00015. PSR ¶ 12. Movant also stipulated to the fact that Gregg-Warren's parental rights to the minor victims had been terminated by a court order. DE 92, p. 2. The "parent" exemption to the federal kidnapping statute was therefore inapplicable to Movant and her codefendants.

"The filing of pretrial motions falls squarely within the ambit of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1983). Because counsel has no obligation to file frivolous motions, he was not ineffective for failing to file motions attempting to dismiss the case based on the parental exception to the federal kidnapping statute. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995); *Clark v. Collins*, 19 F.3d 959, 965–66 (5th Cir. 1994). This claim is denied.

### b. Failure to Communicate

Movant also alleges counsel was ineffective because he "did not disclose or share" any discovery material, defense strategies, or information regarding laws and defenses. D.E. 192, p. 4. In support of this claim, Movant states that Attorney Granberry "never even showed Gregg-Warren her PSI." D.E. 163, p. 2.

Movant is not entitled to relief under § 2255 based on any alleged deficiencies on the part of her codefendants' counsel. *See United States v. Burwell*, 79 F. Supp. 3d 1, 30

(D.D.C. 2015) (movant could not incorporate ineffective assistance of counsel claims raised by codefendants in their own § 2255 motions, where each defendant was represented by different counsel). Instead, she must allege facts showing how her own attorney's failure to disclose discovery or review a defense strategy with her was both deficient and prejudicial.

Not only has Movant failed to offer anything more than conclusory allegations, her own sworn statements in open court belie this claim. At rearraignment, Movant stated that she had discussed her case with her attorney and that she was satisfied with his services. 7/6/2016 Rearraig. Hrg. Tr., D.E. 157 at 6:12-20. She further stated that she had sufficient time to discuss the "ins and outs of the law and the evidence in the case," and she had discussed the charges with her attorney and understood them. *Id.* at 6:21-24, 7:5-10. Movant also reaffirmed that her attorney had been "a good attorney for [her]" and that she was "satisfied with his services in all respects." *Id.* at 6:25–7:4

Because the record directly refutes Movant's claim that counsel performed deficiently in failing to communicate with her, this claim is denied.

### c. Failure to Investigate

Finally, Movant complains that counsel never investigated the "the history of events" surrounding the case, including witnesses, DFPS records, medical and financial records, abuse claims, or "any other defense material." D.E. 192, p. 4.

Under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [case]." *United States v. Green*, 882 F.2d 999,

1003 (5th Cir. 1989) (citing *Alexander v. McCotter*, 775 F.2d 595 (5th Cir. 1985)); *see also United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014). Movant "has failed to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by [her] counsel, and has failed to show that counsel's [purported] failure to follow up on [her] leads was unreasonable." *See Green*, 882 F.2d at 1002. This claim is denied.

### B. Minor Role

Movant claims the Court erred when it failed to grant her a downward adjustment for minor role under U.S.S.G. § 3B1.2(b) because she merely acted in "a supportive role as [Gregg-Warren's] sister and assisted to the rescue of her biological nephew & niece from abuse & neglect that was being ignored by [DFPS]." D.E. 192, p.5.

"A district court's technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255." *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (citing *United States v. Vaughn*, 955 F.2d 367 (5th Cir. 1992)); *see also United States v. Balderas*, 1995 WL 337798, *1 (5th Cir. 1995) (failure to grant a downward adjustment for minor role is non-constitutional and not cognizable under § 2255). Accordingly, this claim is denied.

### C. Sentencing Disparity

Movant next complains that counsel did not object to the "large amount of time" to which she was sentenced compared to her more culpable sister, especially given that Movant was a first time offender with no criminal history.

Movant was sentenced at the lowest end of her advisory Guideline range, which factored in her criminal history category of I. The Court also stated that it took into account Movant's criminal history and found her sentence to be appropriate. 10/27/2016 Sent. Tr., D.E. 158 at 86:10-14. Movant has not shown that counsel was deficient for failing to object to the reasonableness of her sentence. Accordingly, this claim is denied.

**D. Judicial Bias and Prejudice**

Movant also complains that counsel did not object when the Court "created bias and prejudice" by using her codefendants' conduct to enhance her sentence. This appears to be a claim that counsel was ineffective for failing to object to the two-level enhancement under U.S.S.G. § 2A4.1(b)(4)(A) because the kidnapped victims were not released before 30 days had elapsed.

Movant is accountable for all acts and omissions of others that were reasonably foreseeable in connection with the kidnapping that occurred during the commission of the offense or in the course of attempting to avoid detection or responsibility for the offense. *See* U.S.S.G. § 1B1.3(a)(1)(B). Movant has stipulated that she knew that they were kidnapping Gregg-Warren's biological children in order to take them out of the country. D.E. 92, p. 2. She also knew that Thomas Gregg was sending money to Greg-Warren while she was in Mexico. PSR ¶¶ 25–26. The Court finds it was reasonably foreseeable that the children would not be released within 30 days. Accordingly, counsel was not ineffective for failing to object to the enhancement under § 2A4.1(b)(4)(A). This claim is denied.

### E. New Grounds for Relief

Finally, Movant's amended § 2255 motion raises the following grounds for relief for the first time: (1) the Court lacked subject matter jurisdiction to convict Movant for kidnapping because she was a blood relative of T.R. and J.R.; (2) the Government committed prosecutorial misconduct by presenting unsworn and misleading testimony to the grand jury and coercing Movant's codefendant, Jada Gregg-Warren, into pleading guilty; and (3) Movant's indictment, conviction, sentence, and process in this case were all "illegal" because U.S. Marshals paid Mexican bounty hunters to apprehend Gregg-Warren and her children, and the AUSA and the Court knew that Movant could not be prosecuted for kidnapping because she was biologically related to T.R. and J.R., but nonetheless pushed her into pleading guilty.

Because these claims involve an entirely new set of factual and legal issues, they do not relate back to the original § 2255 motion and are time-barred under AEDPA.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Although Movant has not yet filed a notice of appeal, this Court nonetheless addresses whether she would be entitled to a certificate of appealability (COA). *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial

of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As for claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA—that is, reasonable jurists could not debate the Court's resolution of her claims.

## VII. CONCLUSION

For the foregoing reasons, Movant's amended motion under § 2255 (D.E. 192) is

**DENIED,** and Movant is **DENIED** a Certificate of Appealability.

**ORDERED**  4/23/19          .

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE